# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL FUNDS ON DEPOSIT IN BANK OF AMERICA
ACCOUNT ENDING IN 0161, HELD IN THE NAME
OF JAP SOLUTIONS

Case Number: 19-M-098

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Scott Simons, being duly sworn depose and say:

I am a Task Force Officer assigned to the Drug Enforcement Administration, and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, all funds on deposit in Bank of America account ending in 0161, held in the name of JAP Solutions, that is civilly forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), and criminally forfeitable under 21 U.S.C. § 853, as property that constitutes or was derived from proceeds of trafficking in controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(h), 843, and 846, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b), and for purposes of criminal forfeiture under 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.
❑ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Signature of Affiant
Scott Simons, DEA

Sworn to before me, and subscribed in my presence

April 29 2019 3:05 pm
Date and time issued

at Milwaukee, Wisconsin
City and State

David E. Jones, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANTS

I, Scott Simons, being first duly sworn, hereby depose and state as follows:

## Background

1.      I am a Task Force Officer assigned to the Milwaukee Office of the Drug Enforcement Administration ("DEA") as a member of the Tactical Diversion Squad.  I specialize in pharmaceutical investigations.  I have worked full-time as a Federal Task Force Officer for the past 6 years and a full-time law enforcement officer with the Greenfield Police Department for the past 17 years.

2.      During my tenure as a DEA Task Force Officer and a Greenfield Police Department law enforcement officer, I have been involved in the investigation of narcotics traffickers operating not only in the County of Milwaukee and the State of Wisconsin but also other states throughout the United States.  I have received training in the investigation of drug trafficking and computer-related crimes.  I have worked with informants in the investigations of drug trafficking in the Milwaukee area as well as other jurisdictions within the State of Wisconsin and throughout the United States.  I have participated in the application for and execution of numerous search warrants.  I have participated directly in numerous narcotics investigations and arrests in which controlled substances and drug paraphernalia were seized.  I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments.  I am familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in various areas.

3.      Based on my training, experience, and participation in drug trafficking and computer-related investigations, I know that drug traffickers often purchase and/or title assets in fictitious names, aliases or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.  I also know that drug traffickers must maintain on hand large amounts of U.S. currency, sometimes in cash and sometimes in financial accounts, to finance their ongoing drug business.

4.      Because I am submitting this affidavit merely to show merely that there exists probable cause for issuance of the requested warrants, I have not set forth all facts I know about this matter in the affidavit.

5.      The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein and from other law enforcement officers, all of whom I believe to be truthful and reliable.

**Funds Sought to be Seized**

6.      For the reasons set forth below, I submit this affidavit in support of applications for warrants to seize the following:

2

A.  All funds on deposit in Bank of America account ending in #0174, held in the name of ECOM Intelligent LLC, which account has an approximate balance of $218,312.10.

B.  All funds on deposit in Bank of America account ending in #0161, held in the name of JAP Solutions, which account has an approximate balance of $131,000.

C.  All funds on deposit in Charles Schwab account ending in #8857, held in the name of JORGE PAURA, which account has an approximate balance of $1,180,225.34.

D.  All funds on deposit in Charles Schwab account ending in #0742, held in the name of CONRADO FRENZEL, which account has an approximate balance of $886,787.68.

These funds are proceeds of a conspiracy to distribute controlled substances committed in violation of Title 21, United States Code, Sections 829(e), 841(a), 841(h), 843(c)(2)(A) and 846, and are therefore subject to civil forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. §§ 981(a)(1)(C), and to criminal forfeiture under 21 U.S.C. § 853, and subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b) and via a criminal seizure warrant under 21 U.S.C. § 853(f).

### Statutory Background

7.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act, at Title 21, United States Code, Section 829, to address online pharmacies.  No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by 21 C.F.R. § 1306.09(a), under 21 U.S.C. § 829(e) and § 841(a)(1) (Distribution of Controlled Substances) and 21 U.S.C. § 841(h) and § 843(c)(2)(A) (Offenses involving

3

distribution of Controlled Substances by means of the Internet). Under 21 U.S.C. § 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least one in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least one in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine, within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

8.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. According to 21 C.F.R. § 1301.11(b):

> As provided in sections 303(f) and 401(h) of the Act (21 U.S.C. 823(f) and 841(h)), it is unlawful for any person who falls within the definition of "online pharmacy" (as set forth in section 102(52) of the Act (21 U.S.C. 802(52)) and § 1300.04(h) of this chapter) to deliver, distribute, or dispense a controlled substance by means of the Internet if such person is not validly registered with a modification of such

4

registration authorizing such activity (unless such person is exempt from such modified registration requirement under the Act or this chapter).

9.     According to DEA records, Goldpharma24 is not a registered online pharmacy.

## Facts Supporting Finding of Probable Cause

10.     In February 2015, the Milwaukee District Office of the DEA initiated an investigation into the internet pharmacy GOLDPHARMA24, located at www.goldpharma-24.com, which advertised for sale controlled and non-controlled pharmaceuticals, including schedule II controlled substances, without requiring a prescription for such substances.

11.     Between June 2015 and January 2019, case agents conducted numerous controlled online buys and interviewed multiple United States-based customers who made online purchases from the GOLDPHARMA24 DTO.  Controlled substances (schedule II, III, and IV) and non-controlled substances requiring prescriptions were purchased.  Common forms of payment were credit card, money transfer (Western Union/Money Gram), Bitcoin, and PayPal.  Case agents and customers communicated with GOLDPHARMA24 DTO employees by email and telephone to facilitate these drug purchases.  These drugs would then arrive at an address provided by the undercover agent or customer.  The undercover agent never received an examination nor was ever questioned about medical history, current medications, or symptoms, which would be required in order to be prescribed these controlled medications.  Customers who were interviewed had the same experience.

5

12.     Throughout the course of this investigation, case agents obtained many federal search warrants for numerous email accounts used by the GOLDPHARMA DTO.  Review of the emails obtained following the execution of those search warrants revealed that thousands of customers have purchased controlled substances and prescription drugs without a prescription from GOLDPHARMA24 and other associated internet pharmacy websites operated by the GOLDPHARMA DTO.  Review of the emails further revealed that GOLDPHARMA24 and other associated internet pharmacies are run by CONRADO FRENZEL, JORGE PAURA, SANTIAGO VIDEMATO, LUCIANO BRUNETTI, and LUCAS PAURA.  These individuals used various email addresses, including email addresses linked to private servers.  Members of this organization routinely used servers and virtual private networks ("VPN") to mask their IP addresses and criminal activity while operating online.

13.     A review of emails from jessicagilmore24hs@gmail.com, which was identified as an email account for an employee of GOLDPHARMA24 known only to case agents  as "Jessica Gilmore," led case agents  to positively identify Mariana Fernandez Dionesalvi, a Paraguayan national residing in Buenos Aires, Argentina. Case agents located an email from "Sebi" (seba@phcenter.net), which was written to Fernandez Dionesalvi (jessicagilmore24hs@gmail.com) as well as jsarah24hs@gmail.com on January 16, 2012, at approximately 3:57 p.m., and was titled "Contactos gTalk."  The email listed the following email addresses and names of workers for the organization and their jobs within the organization, among others:

6

- 11carlcarlson@gmail.com: used by LUCAS PAURA, whose job was identified as a processor.

- 11larrychief@gmail.com: used by JORGE PAURA, whose job was identified as the top or head of the organization.

- 11ottochief@gmail.com: used by CONRADO FRENZEL, whose job was identified as the top or head of the organization.

- m07smith@gmail.com: used by SANTIAGO VIDEMATO, who was responsible for managing the commissions for the organization as well as some files.

- 11theodorebagwell@gmail.com: used by LUCIANO BRUNETTI, whose job was to process orders.

Based upon their training and experience and the investigation to date, case agents believe that this email was an introductory email to "Jessica Gilmore" providing her information about who worked for the organization and each person's role within the drug trafficking organization.

14.     Based on a review of emails, case agents also identified a JP Morgan Chase Bank account that was being used to transfer funds to a source of supply for the drugs, based in Romania.  It was later learned this same bank account was also used to transfer funds to Miami, Florida, for the purchase of real property which is owned by CONRADO FRENZEL and JORGE PAURA.  As a result of the same bank account being used to pay the sources of supply and purchase assets, case agents believe these real

7

properties and other related investments, such as financial accounts, were derived from drug trafficking.

15. In September 2016 and December 2016, case agents interviewed two Argentine Nationals about the JP Morgan Chase Bank account used to transfer funds to the Romanian source of supply and to transfer funds for the purchase of Miami properties belonging to CONRADO FRENZEL and JORGE PAURA. These Argentine Nationals (Source of Information #1 ("SOI #1") and Source of Information #2 ("SOI #2")), stated that they had control over this U.S.-based bank account. They were approached by SERGIO FERRARI and asked if they would regularly transfer funds to various accounts in the United States and overseas. Based on a review of emails, case agents are aware that FERRARI assisted the GOLDPHARMA DTO in moving and managing money associated with their drug trafficking operation. SOI #1 and SOI #2, however, did not know that the funds they were being directed to transfer on FERRARI's behalf were being used to illegally purchase controlled substances. SOI #1 and SOI #2 would email SERGIO FERRARI screen images of money transfers, which included transfers to the Romanian source of drug supply, as proof the transaction was completed. In an eight-month period, approximately $219,000 was wired to overseas accounts, including $45,200 directly to a Romanian Source of Supply - Laurentiu Piros. Case agents located emails containing these screen images being emailed from SERGIO FERRARI to the GOLDPHARMA DTO.

16. On January 25, 2018, the Romanian National Police, along with DEA Bucharest and U.S. authorities, conducted a coordinated takedown of the Romanian

8

source of drug supply, known as the Cosmin Muntean DTO. The takedown included the execution of forty-three (43) search warrants and the arrest of twenty-three (23) members of the DTO, including Cosmin Muntean, Ovidiu Laurentiu Piros, Gabriel Porutiu, and Cristian Muntean. Hundreds of thousands of controlled pharmaceuticals were seized, along with prescriptions, shipping materials, and records of shipments to the United States, and fake prescriptions for controlled pharmaceuticals purportedly issued by Dr. Ladislav Smrcek. During the course of their investigation, the Romanian National Police conducted fifteen (15) judicially approved phone intercepts of the many members of this drug trafficking organization throughout 2017 and 2018, which led to the identification of more than 30 Romanian co-conspirators and identified the diversion of controlled pharmaceuticals from Romanian pharmacies. The Romanian National Police also identified "Otto" (CONRADO FRENZEL) from the phone intercepts as being a major client of the Muntean DTO. The Muntean DTO referred to CONRADO FRENZEL as a "VIP" customer.

17.     On approximately February 8, 2018, shortly after the Romanian takedown, the GOLDPHARMA24 internet pharmacy website was shut down. The website reported that the business was shutting down, but they could still be contacted for any outstanding orders. Case agents learned that the website was taken down due to a problem with the drug shipper and believed that the GOLPHARMA24 internet pharmacy was shut down because of the takedown of the Muntean drug trafficking organization weeks earlier, thereby cutting off their primary source of supply of controlled pharmaceuticals to sell illegally via internet pharmacies.

9

18.     On February 13, 2018, a case agent made a recorded undercover telephone call to the GOLDPHARMA24 Internet pharmacy call center at (602) 666-0056. A case agent spoke with a GOLDPHARMA24 representative who reported the pharmacy website would be down for a few months, but business was still active and orders could be placed over the phone with pharmacy representatives. The GOLDPHARMA24 representative advised that codeine was unavailable for another two weeks while they work with their new source of supply to ensure the drugs are reliable. Other drugs were offered to the case agent pending the availability of codeine, and case agents were provided with a new pharmacy phone number. Case agents believed that the online pharmacy no longer had codeine because their source of supply for codeine had recently been arrested a few weeks earlier.

19.     On May 21, 2018, case agents interviewed a Source of Information #3 (SOI #3). SOI #3 was an employee in the call center for the GOLDPHARMA24 DTO. SOI #3 began working in the call center in January 2012 and ceased employment after several years. SOI #3 identified CONRADO FRENZEL and JORGE PAURA as being the owners of the series of online pharmacies which sold controlled and non-controlled pharmaceuticals primarily to the United States. SOI #3 said CONRADO FRENZEL, JORGE PAURA, and a third subject known to SOI #3 as "Yagy" created the DTO in approximately 2007, but "Yagy" is no longer actively involved with the distribution of controlled substances. Case agents have identified "Yagy" as SERGIO FERRARI. SOI #3 also identified SANTIAGO VIDEMATO, LUCAS BRUNETTI, and LUCAS PAURA as having leadership roles in the DTO. Employees were only paid in cash, and

10

employees received no benefits that Argentine laws require legitimate businesses provide.

20.     SOI #3 stated CONRADO FRENZEL and JORGE PAURA both studied pharmaceuticals together. CONRADO FRENZEL owns a legitimate brick and mortar pharmacy, but JORGE PAURA dropped out of school and now may own a taxi registration company. SOI #3 said although CONRADO FRENZEL may have a legitimate pharmacy, in addition to the illegal online pharmacies. CONRADO FRENZEL initially used the pharmaceuticals from this legitimate brick and mortar pharmacy located in Buenos Aires, Argentina to acquire the pharmaceuticals. The pharmaceuticals from the legitimate pharmacy were shipped to customers from the illegal online pharmacies. CONRADO FRENZEL and JORGE PAURA eventually began acquiring the pharmaceuticals from overseas sources of supply. SOI #3 stated CONRADO FRENZEL, JORGE PAURA, and all the GOLDPHARMA24 employees knew the business was illegal. They knew this for various reasons, some of which are because U.S. customers were frequently having drug shipments seized by U.S. Customs, and payment processors would stop processing payments when learning of the type of product being sold.

21.     On June 8, 2016, law enforcement executed a search warrant on 7Search, a company that performed online advertising for its customers. The execution of the search warrant on 7Search revealed evidence that 7Search advertised for GOLPHARMA24 and other similar internet pharmacies operated and owned by the same DTO. Case agents interviewed former employees of 7Search in June of 2018

regarding their knowledge of the GOLDPHARMA24 DTO. The former 7Search employees stated that in 2011 or 2012, JORGE PAURA came to 7Search in person and met with 7Search employees to discuss increasing their pharmaceutical sales. The former 7Search employees stated that GOLDPHARMA24 was a client of 7Search's beginning on September 17, 2008 or earlier, and that the first accounts were opened by SERGIO FERRARI. 7Search records revealed that 7Search was paid approximately $1 million USD for services provided during the time period of their business relationship.

22.     On October 10, 2018, the following five defendants were indicted in the Eastern District of Wisconsin with multiple counts of conspiracy to distribute and importation of illegal controlled substances:

- CONRADO FRENZEL
- JORGE PAURA
- SANTIAGO VIDEMATO
- LUCIANO BRUNETTI
- LUCAS PAURA

Also indicted, as substitute assets, were twenty-eight real properties located in and near Miami, Florida that are owned by CONRADO FRENZEL and JORGE PAURA. These properties are valued at more than $5.2 million USD.

23.     On March 12, 2019, case agents along with Buenos Aires City Police Officers, executed search warrants on the known residences of the five indicted defendants, as well as two known GOLDPHARMA call centers located in Buenos Aires used by the DTO. CONRADO FRENZEL, JORGE PAURA, and SANTIAGO

12

VIDEMATO were arrested on March 12, 2019. LUCAS PAURA was later located and arrested on March 22, 2019, but at this time LUCIANO BRUNETTI is a fugitive.

24. Argentina authorities seized and identified assets located in Argentina at the time of the arrests. Law enforcement seized bulk cash in the form of various currencies, equivalent to $348,500 USD, seven vehicles worth approximately $194,125 USD, and CONRADO FRENZEL's house which is estimated at approximately $400,000 USD and does not have an existing mortgage. Argentina law enforcement also identified and froze multiple bank accounts, containing a yet unidentified amount of funds, located in Argentina.

25. Case agents reviewed evidence seized during the execution of the search warrants and found financial records identifying numerous accounts throughout the world, including in the United States. Records were also located confirming the ownership of the indicted Miami, Florida properties by CONRADO FRENZEL and JORGE PAURA. Subsequent grand jury subpoenas identified the financial accounts located in the United States containing substantial funds as the following:

    A.    Bank of America account #XXXX XXXX 0174 in the name of ECOM Intelligent LLC with an approximate value of $218,312.10 USD.

    B.    Bank of America account #XXXX XXXX 0161 in the name of JAP Solutions with an approximate value of $131,000 USD.

    C.    Charles Schwab account #XXXX-8857 in the name of JORGE PAURA with an approximate value of $1,180,225.34 USD.

    D.    Charles Schwab account #XXXX-0742 in the name of CONRADO FRENZEL with an approximate value of $886,787.68 USD.

13

26.     On March 13, 2019, case agents interviewed SANTIAGO VIDEMATO who provided a Mirandized in-custody statement while in the presence of his Argentine attorney. SANTIAGO VIDEMATO began working for the GOLDPHARMA24 DTO in 2006 when his cousin, SERGIO FERRARI, introduced him to the DTO owners, CONRADO FRENZEL and JORGE PAURA. SANTIAGO VIDEMATO said the DTO sold controlled pharmaceuticals, and the majority of the customers are located in the United States. CONRADO FRENZEL and JORGE PAURA both claimed to be pharmacists. According to SANTIAGO VIDEMATO, JORGE PAURA had no other source of income, and CONRADO FRENZEL owned a brick and mortar pharmacy, but nearly all of his assets were derived from the GOLDPHARMA24 DTO. SANTIAGO VIDEMATO said the DTO's monthly sales ranged from $200,000 USD for a bad month to $450,000 USD for a good month. SANTIAGO VIDEMATO also identified LUCIANO BRUNETTI and LUCAS PAURA as being members of the DTO.

27.     SANTIAGO VIDEMATO informed case agents he had control over a China bank account containing a quantity of Euros which was found to be the approximate value of $214,000 USD. SANTIAGO VIDEMATO said this account belongs to CONRADO FENZEL and JORGE PAURA for the purpose of operating the DTO. CONRADO FRENZEL and JORGE PAURA directed SANTIAGO VIDEMATO to use this China bank account to pay the sources of supply.

28.     On March 15, 2019, case agents interviewed Source of Information #4 (SOI #4), a current employee of the GOLDPHARMA24 DTO call center located in Buenos Aires, Argentina. SOI #4 began working for this DTO in December 2016. SOI #4 stated

14

the DTO sold controlled pharmaceuticals, without requiring a prescription, and mostly to customers located in the United States. SOI #4 identified CONRADO FRENZEL, JORGE PAURA, SANTIAGO VIDEMATO, LUCIANO BRUNETTI, and LUCAS PAURA. SOI #4 stated CONRADO FRENZEL and JORGE PAURA were the owners of the business. According to SOI #4, the DTO made approximately $500,000 USD per month in sales. SOI #4 believes this because SOI #4 sold $135,000 USD worth of pharmaceuticals by himself/herself. SOI #4 said customers were regularly having their drugs seized by U.S. Customs, and these seizures were frequently made known to CONRADO FREZNEL and JORGE PAURA. Although the seizure letters from U.S. Customs reported the importation of these drugs was illegal, CONRADO FRENZEL and JORGE PAURA directed the employees to reship the same drugs. SOI #4 was unaware of any sources of income for CONRADO FRENZEL or JORGE PAURA other than the GOLDPHARMA24 DTO. SOI #4 stated CONRADO FRENZEL and JORGE PAURA were present at the call center everyday starting in the afternoon through approximately 6:00PM. Case agents believe this further supports the fact that this was the sole occupation and source of income for CONRADO FRENZEL and JORGE PAURA. A total of approximately twelve GOLDPHARMA24 call center employees were interviewed, and they all provided similar statements.

29. On March 21, 2019, case agents conducted an out-of-custody voluntary interview of Source of Information #5 (SOI #5), whose job at the call center was to set up the websites and servers, and to address other technical concerns. In 2004 or 2005, SOI #5 began working for JORGE PAURA, CONRADO FRENZEL, and SERGIO

15

FERRARI who were all co-owners of the DTO. SOI #5 worked for them for a couple years, but then they no longer needed his/her help. In approximately 2011, SOI #5 was contacted by them again to come back and continue working, which SOI #5 did. A short time later, SERGIO FERRARI ended ties with the DTO, at which point, CONRADO FRENZEL and JORGE PAURA were the sole owners. SOI #5 has continued working for them until U.S. and Argentine law enforcement conducted this arrest and search warrant operation. SOI #5 knew the DTO sold pharmaceuticals, but he/she did not know what types because SOI #5 was not involved in the sale of the drugs. SOI #5 also identified SANTIAGO VIDEMATO, LUCIANO BRUNETTI, LUCAS PAURA, and other call center employees.

30.     Case agents reviewed several years of email records from Google and Yahoo which were received pursuant to federal search warrants. These email accounts belonged to GOLDPHARMA24 DTO call center employees and the five indicted defendants. Spreadsheets containing sales revealed the majority of the customers were located in the United States and the DTO was producing on average at least $400,000 USD in sales per month. These records are not complete due to the DTO transitioning to encrypted email providers and because emails purge after a period of time. Based on only the portion of records which were still available, case agents were able to identify the amount in sales from approximately September 20, 2014, through May 29, 2018, to only U.S. customers as $9,361,637.50 USD. Based on these sales, case agents calculated a total of 8,350,690 tablets of controlled pharmaceuticals sold to U.S. customers and a total of 10,407,061 tablets of controlled pharmaceuticals sold worldwide.

16

**Bank of America account ending in #0174, held in the name of ECOM Intelligent LLC**

31.     Case agents reviewed evidence which was seized during the execution of search warrants. In the residence of CONRADO FRENZEL, a document was recovered which shows CONRADO FRENZEL is the "ultimate beneficial owner of 100% interest of the company ECOM Intelligent Ltd." This company was registered on January 23, 2015, in Belize using the address 1 Mapp Street, Belize City, Belize. This is the same address listed on the GOLDPHARMA24 online pharmacy website as the pharmacy's address. SOI #4 was a current employee in the GOLDPHARMA24 DTO call center. SOI #4 was told by JORGE PAURA that if a customer ever asks where their pharmacy is located, SOI #4 should tell the customer they are located in Belize. As a result, case agents believe the Bank of America account ending in #0174 and held in the name of ECOM Intelligent LLC is an account used in the furtherance of the GOLDPHARMA24 DTO.

32.     Case agents also recovered a Bank of America debit card ending in #5610 displaying the names "ECOM Intelligent LLC" and "Conrado Frenzel" in the home of CONRADO FRENZEL, which is where CONRADO FRENZEL was arrested. This debit card was found to be associated with the ECOM Intelligent LLC Bank of America account ending in #0174 with an approximate value of $218,312.10 USD. Case agents believe this bank account belongs to and is under the control of CONRADO FRENZEL.

33.     Case agents reviewed financial records provided by Bank of America related to account ending in #0174. The authorized signors on the account are

17

FRENZEL and V.R., a person who is responsible for managing real estate properties for PAURA and FRENZEL in Florida. As described above, PAURA and FRENZEL acquired some real properties in Florida using the same bank accounts used to pay sources of drug supply.

**Charles Schwab account ending in #8857, held in the name of JORGE PAURA**

34.     Case agents reviewed financial records provided by Charles Schwab related to account ending in #8857 held in the name of JORGE PAURA, with an approximate value of $1,180,225.34 USD. Records show that this account was opened in January 2007, which is after the drug trafficking organization began. At the time the account was opened, JORGE PAURA reported his occupation was "car rental business." JORGE PAURA also reported to Charles Schwab that his annual income at that time was between $25,000 to $49,999 USD.

35.     Based on the low annual income that JORGE PAURA reported to Charles Schwab when he opened the account, the fact this account was not opened until after the DTO commenced, and that PAURA earned substantial proceeds from the DTO's unlawful operations, I submit that there exists probable cause to believe that substantially all the funds on deposit in this account were derived from drug trafficking.

**Charles Schwab account ending in #0742, held in the name of CONRADO FRENZEL**

36.     Case agents reviewed financial records provided by Charles Schwab related to account ending in #0742 held in the name of CONRADO FRENZEL, with an approximate value of $886.787.68 USD. Records show this account was opened in

18

January 2007, which is after the drug trafficking organization began. At the time the account was opened, CONRADO FRENZEL reported he was a pharmacist and that his annual income was between $15,000 and $24,999 USD. In March 2013, there was an updated document reporting FRENZEL's annual income was $200,000 USD and that his liquid net worth was $1,100,000. In November 2018, there was a document updating the account profile information. This document reported FRENZEL was a "biochemist advisor" and earned over $100,000 USD annually with a net worth greater than $3.5 million.

37.    Based on the low annual income that FRENZEL reported to Charles Schwab when he opened the account, the fact this account was not opened until after the DTO commenced, and that FRENZEL earned substantial proceeds from the DTO's unlawful operations, I submit that there exists probable cause to believe that substantially all the funds on deposit in this account were derived from drug trafficking.

**Bank of America account ending in #0161, held in the name of JAP Solutions**

38.    Case agents also reviewed financial records provided by Bank of America related to account ending in #0161 held in the name of JAP Solutions LLC and JORGE PAURA with an approximate value of $131,000 USD. (JAP are PAURA's initials.) The authorized signors on the account are PAURA and V.R., a person who manages Florida real properties for PAURA and FRENZEL.

39.    During the course of the investigation, case agents identified 28 properties owned/controlled by PAURA and FRENZEL. A title search and market analysis was

performed on the properties. The properties were purchased from September 2011 through August 2017, with 16 of the properties being purchased from 2015 and later. None of the properties had a mortgage recorded with the county register of deeds office. The properties had an aggregate estimated market value of $5.2 million and assessed value of $3.5 million. The properties were titled in various corporation names. A search of the Florida Secretary of State records revealed the managing member for the properties as JC Investment Group SA located in Panama. During the execution of the search warrant of PAURA's residence, agents located a stock certificate for JC Investment Group SA.

40.     Case agents obtained the 2016 and 2017 US Individual tax returns for PAURA and FRENZEL. The returns were prepared by a Certified Public Accountant in Miami, Florida. In 2016 and 2017, PAURA reported total income of ($4,736) and $269, respectively. In 2016 and 2017, FRENZEL reported ($4,880) and $277, respectively. On the cover sheets addressed to PAURA and FRENZEL, the CPA includes the statement "I have prepared your return based on the information you provided."

41.     Case agents were also provided Argentine tax returns by the Argentine Authorities which were filed by CONRADO FRENZEL and JORGE PAURA from 2011 through 2017.

42.     A review of Argentine tax returns filed by CONRADO FRENZEL showed that he reported his occupation as advisory services – management and business administration. The following are earnings and assets declared by CONRADO

20

FRENZEL to the Argentina tax authority based on Argentine Pesos and an approximate U.S. dollar value based on the exchange rate for that given time period:

**2011**: Earnings: $0          Assets in and out of Argentina: $0

**2012**: Earnings: $0          Assets in and out of Argentina: $0

**2013**: Earnings: $0          Assets in and out of Argentina: $0

**2014**: Earnings: 185,636.36 pesos ($23,000.35 USD)

Assets within Argentina – 334,421 pesos ($41,434.76 USD)

- Real Estate:   138,171.00 pesos ($17,119.39 USD)

- Automobile:  153,000.00 pesos ($18,956.70 USD)

- Currency within Bank:  2,000.00 pesos ($247.80 USD)

- Currency outside of Bank:  5,850.00 pesos ($724.82 USD)

- Furniture and Personal Goods:  35,400.00 pesos ($4,386.06 USD)

Assets outside of Argentina - 0 pesos ($0 USD)

**2015**:  Earnings: 396,000.00 pesos ($43,045.20 USD)

Assets in and out of Argentina: 0 pesos ($0 USD)

**2016**: Earnings: 168,000.00 pesos ($11,407.20 USD)

Assets within Argentina – 19,724,268.94 pesos ($1,339,277.86 USD)

- Real Estate:   9,116,261.76 pesos ($618,994.17 USD)

- Vessel/Boat: 88,000 pesos ($5,975.20 USD)

- Automobile:  597,200.00 pesos ($40,549.88 USD)

- Currency: 2,756,062.23 pesos ($187,136.63 USD)

- Furniture and Personal Goods: 3,058,367.43 pesos ($207,663.15 USD)

21

- Credits: 4,108,377.52 pesos ($278,958.83 USD)

Assets outside of Argentina – 48,590,920.94 pesos ($3,299,323.53 USD)

- Real Estate (Thirty Florida Properties): 44,501,447.04 pesos ($3,021,648.25 USD)

- Currency (Fourteen U.S. Bank Accounts): 4,089,473.90 pesos ($277,675.28 USD)

**2017**: Earnings: 78,000.00 pesos ($4,726.80 USD)

Assets within Argentina – 47,887,653.96 pesos ($2,901,991.83 USD)

- Real Estate: 10,016,148.48 pesos ($606,978.60 USD)

- Vessel/Boat: 66,000 pesos ($3,999.60 USD)

- Automobile: 1,118,250.00 pesos ($67,765.95 USD)

- Currency: 28,417,068.00 pesos ($1,722,074.32 USD)

- Titles/Shares: 1,659,186.24 pesos ($100,546.69 USD)

- Furniture and Personal Goods: 3,547,376.19 pesos ($214,971.00 USD)

- Credits: 3,063,625.05 pesos ($185,655.68 USD)

Assets outside Argentina – 32,226,367.92 pesos ($1,952,917.89 USD)

- Real Estate (Thirty Florida Properties): 26,607,245.93 pesos ($1,612,399.10 USD)

- Currency (Fourteen U.S. Bank Accounts): 3,619,121.99 pesos ($219,318.79 USD)

Exempted Assets – 25,428,604.40 pesos ($1,540,973.43 USD)

- Real Estate: 24,854,404.40 pesos ($1,506,176.91 USD)

- Automobile: 574,200.00 pesos ($34,796.52 USD)

43. A review of tax returns filed by JORGE PAURA showed that he reported his occupation as taxi transportation services and car rental with chauffeur. JORGE

22

PAURA claimed a very minimal annual income throughout the tax records consisting of 2012 through 2015.  No records documenting his claimed income are available for 2016 and 2017, but he did claim owned assets.  The following are earnings and assets declared by JORGE PAURA to the Argentina tax authority based on Argentine Pesos and an approximate U.S. dollar value based on the exchange rate for that given time period:

**2012**:  Earnings: $36,000.00 pesos ($7,930.80 USD)

Assets within Argentina – 50,000.00 pesos ($11,015.00 USD)

- Currency: 50,000.00 pesos ($11,015.00 USD)

Assets outside of Argentina – 0 pesos ($0 USD)

None declared

**2013**:  Earnings: $43,000.00 pesos ($7,903.40 USD)

Assets within Argentina – 50,000.00 pesos ($9,190.00 USD)

- Currency: 50,000.00 pesos ($9,190.00 USD)

Assets outside of Argentina – 0 pesos ($0 USD)

None declared

**2014**:  Earnings: $45,000.00 pesos ($5,575.50 USD)

Assets within Argentina – 50,000.00 pesos ($6,195.00 USD)

- Currency: 50,000.00 pesos ($6,195.00 USD)

Assets outside of Argentina – 0 pesos ($0 USD)

None declared

**2015**:  Earnings: $45,000.00 pesos ($4,891.50 USD)

<u>Assets within Argentina – 50,000.00 pesos ($5,435.00 USD)</u>

- Currency: 50,000.00 pesos ($5,435.00 USD)

<u>Assets outside of Argentina – 0 pesos ($0 USD)</u>

None declared

**2016**: No records of earnings provided

<u>Assets within Argentina – 19,985,061.23 pesos ($1,356,985.66 USD)</u>

- Real Estate:   1,879,641.60 pesos ($127,627.67 USD)

- Vessel/Boat: 88,000.00 pesos ($5,975.20 USD)

- Currency: 10,838,256.00 pesos ($735,917.58 USD)

- Furniture and Personal Goods: 3,070,786.11 pesos ($208,506.38 USD)

- Credits:  4,108,377.52 pesos ($278,958.83 USD)

<u>Assets outside Argentina – 32,226,367.92 pesos ($2,188,170.38 USD)</u>

- Real Estate (Thirty Florida Properties):   44,501,447.01 pesos ($3,021,648.25 USD)

- Currency (Fourteen U.S. Bank Accounts): 2,837,402.93 pesos ($192,659.66 USD)

<u>Exempted Assets – 4,644,350.94 pesos ($315,351.43 USD)</u>

Currency: 4,644,350.94 pesos ($315,351.43 USD)

**2017**: No records of earnings provided

<u>Assets within Argentina – 38,500,951.20 pesos ($2,333,157.64 USD)</u>

- Real Estate:   2,572,675.81 pesos ($155,904.15 USD)

- Vessel/Boat: 66,000.00 pesos ($3,999.60 USD)

- Currency: 28,417,068.00 pesos ($1,722,074.32 USD)

- Furniture and Personal Goods: 3,100,390.34 pesos ($187,883.66 USD)

24

- Credits: 3,063,625.05 pesos ($185,655.68 USD)

Assets outside Argentina – 35,526,925.30 pesos ($2,152,931.67 USD)

- Real Estate (Thirty Florida Properties): 26,607,245.93 pesos ($1,612,399.10 USD)

- Currency (Fourteen U.S. Bank Accounts): 8,919,679.37 pesos ($540,532.57 USD)

Exempted Assets – 34,684,201.43 pesos ($2,101,862.61 USD)

- Real Estate: 24,854,404.40 pesos ($1,506,176.91 USD)

- Currency: 5,365,643.31 pesos ($325,157.99 USD)

- Titles/Shares: 4,464,153.72 pesos ($270,527.72 USD)

44.     In 2016, CONRADO FRENZEL and JORGE PAURA declared assets both within Argentina and the United States (as required by Argentine law), which they had not previously declared to the Argentine tax authority. On July 25, 2016, Argentina law granted amnesty to its citizens for undeclared assets if they would declare said assets by a specific date. A one-time tax would be required for concealing assets from the Argentine authorities. As a result, both CONRADO FRENZEL and JORGE PAURA declared millions of dollars in hidden assets to the Argentine tax authority. They both paid a large tax to Argentina.

45.     Based on filed tax returns, in 2017 CONRADO FRENZEL and JORGE PAURA transferred the majority of their assets to Argentina but still maintained approximately thirty real properties located in Florida and approximately fourteen bank accounts located within the United States. In addition to these assets located within the United States, worth millions of dollars, they also claim to own assets worth even more located in Argentina. As of 2017, CONRADO FRENZEL declared owning

25

assets worth approximately $6,395,883.15 and JORGE PAURA declared owning assets worth approximately $6,587,951.92 USD. In addition, CONRADO FRENZEL and JORGE PAURA each claimed to be 50% owners of the majority of the Florida properties and the bank accounts located in the United States. Case agents believe the fact that they have nearly identical assets and even share the same assets, further proves that they are business partners, and that the only business identified that they are involved in together is the unlawful trafficking of controlled pharmaceuticals.

46.     Based on the review of tax returns and other financial records, case agents have determined that CONRADO FRENZEL and JORGE PAURA have accumulated a significant amount of assets that are unsubstantiated by and unrelated to the occupations claimed on their tax return records, bank applications in the United States, and the facts reported by multiple Sources of Information. They both claim minimal annual earnings, which would not support the assets they own, including the funds deposited in the accounts that are the subject of these applications for seizure warrants—which accounts contain a total of approximately $2.5 million—and multiple properties worth in excess of $5 million.

47.     Under Title 21, United States Code, Section 853(d):

> There is a rebuttable presumption at trial that any property of a
> person convicted of a felony under this subchapter or subchapter II
> is subject to forfeiture under this section if the United States
> establishes by a preponderance of the evidence that—
>
> (1)  such property was acquired by such person during the period
>      of the violation of this subchapter or subchapter II or within a
>      reasonable time after such period; and

26

> (2) there was no likely source for such property other than the
> violation of this subchapter or subchapter II.

21 U.S.C. § 8543(d)

48.     In addition, the Government may obtain seizure warrant for up to amount

of criminal proceeds deposited into account. *See United States v. United States Currency*

*Deposited in Account . . . for Active Trade Company*, 176 F.3d 941, 947 (7th Cir. 1999).

49.     I submit that a restraining order under 21 U.S.C. § 853(e) may not be

sufficient to assure the availability of the funds for forfeiture because I have been

advised of cases in which, even after restraining order or similar process has been

issued to financial institution, the funds sought to be restrained were not effectively

restrained by the financial institution.  In my judgment, a seizure warrant would be the

most effective way to assure the availability of the money sought to seized for forfeiture

by the accompanying seizure warrant.

### Conclusion

50.     Based on the facts and circumstances set forth in this affidavit, I submit

that there exists probable cause to believe that the following funds on account are

traceable to, and are therefore proceeds of, a conspiracy to distribute controlled

substances offenses committed in violation of Title 21, United States Code,

Sections 829(e), 841(a), 841(h), 843(c)(2)(A) and 846, and are therefore subject to civil

forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), and to criminal

forfeiture under 21 U.S.C. § 853, and are subject to seizure via a civil seizure warrant

under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b) and via a criminal seizure warrant under

21 U.S.C. § 853(f):

    A.    All funds on deposit in Bank of America account ending in #0174, held in the name of ECOM Intelligent LLC, which account has an approximate balance of $218,312.10.

    B.    All funds on deposit in Bank of America account ending in #0161, held in the name of JAP Solutions, which account has an approximate balance of $131,000.

    C.    All funds on deposit in Charles Schwab account ending in #8857, held in the name of JORGE PAURA, which account has an approximate balance of $1,180,225.34.

    D.    All funds on deposit in Charles Schwab account ending in #0742, held in the name of CONRADO FRENZEL, which account has an approximate balance of $886,787.68.

# # #